UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| WILLIAM CHATMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  No.: 11-1257-MMM-JAG |
| | ) |
| | ) |
| GUY D. PIERCE, GLADYSE TAYLOR, | ) |
| and JOHN HEATH, | ) |
| | ) |
| Defendants. | ) |

## ORDER

**MICHAEL M. MIHM, U.S. District Judge:**

This cause is before the Court on Defendants Guy D. Pierce, Gladyse Taylor, and John Heath's Motion for Summary Judgment.

## I.
## MATERIAL FACTS

Plaintiff William Chatman is an inmate within the Illinois Department of Corrections ("IDOC") and, at all relevant times, was housed in the Pontiac Correctional Center. Defendant John Heath was a correctional officer within the Pontiac Correctional Center. Defendant Gladyse Taylor was the Assistant Director for the IDOC. Finally, Defendant Guy Pierce was the Chief Administrative Officer at the Pontiac Correctional Center.

On August 22, 2010, Chatman submitted a grievance against Heath claiming that Heath was smuggling cigarettes into the Pontiac Correctional Center and was providing them to inmate Corey Young in exchange for adult magazines. On September 10, 2010, Chatman was transferred to a cell located on the unit in which Heath worked. On September 17, 2010, Heath

issued a disciplinary report against Chatman for intimidation and insolence. Specifically, the report alleged:

> On the above date and approx. time this r/o touring the gallery one in ECH when I/M Chatman #R41178 accused me of stealing his magazines and called me a "fucking liar" when I denied it. He then said he was going to "blast me in the face with shit." He proceeded to open a milk carton and I exited the gallery and informed Lt. Smith. This r/o considers his actions and words offensive and felt his threats to be taken seriously. During the course of the evening this I/M made the same threat several more times. I/M was Id'd by gallery chart. Lt. Smith notified. EOR.

Chatman claims that Heath fabricated the incident. As a result of the incident report, Chatman was transferred to cell ECH 116 and was placed behind plexi-glass doors. On September 23, 2010, the Adjustment Committee heard the disciplinary ticket issued to Chatman by Heath and found Chatman guilty of the disciplinary infractions alleged. The Adjustment Committee recommended that Chatman serve three months segregation and three months C grade.

Also on September 23, Heath issued another disciplinary ticket to Chatman for intimidation or threats and insolence. This second disciplinary ticket provided in relevant part:

> On the above date and approx. time, this r/o was touring 1 gallery when I/M Chatman stopped me and stated that he was going to turn me in to "I.A." for writing him a "bogus" ticket for threats on 9/17/10 which got I/M Chatman placed in a different cell behind plexi-glass. He has made several false allegations about me and threatened to have other inmates make similar false claims against me. He stated, "motherfucker Heath, I'm gonna have your ass fired for moving me." He claims he will tell I.A. that I am doing "all kinds of shit." I/M Id'd by face and gallery chart. Lt. Reilman notified. E.O.R.

Chatman admits that he informed Heath that he was planning on turning Heath into Internal Affairs, but he maintains that Heath fabricated events supporting the disciplinary ticket. On September 29, 2010, the Adjustment Committee heard the second disciplinary ticket and found Chatman guilty of the alleged offenses. Chatman contends that Heath issued the

2

disciplinary tickets to him, not for the reasons stated in the disciplinary tickets themselves, but in retaliation for his filing grievances against and writing letters to the warden about Heath. Although Internal Affairs investigated Chatman's allegations of misconduct by Heath, Internal Affairs determined that the Chatman's allegations of misconduct by Heath could not be substantiated.

Accordingly, Chatman filed this case against Defendants pursuant to 42 U.S.C. § 1983. Chatman alleges that, after Heath learned that Chatman had filed grievances and had written letters to the warden about Heath, Heath retaliated against him by verbally harassing him, by tampering with his food, and by going through his mail. Chatman avers that Heath's actions violated his First Amendment rights.

Chatman further contends that Taylor and Pierce also violated his constitutional rights. Chatman claims that he and his family informed Taylor and Pierce about Heath's retaliatory conduct toward Chatman, but neither Taylor nor Pierce took any action(s) to prevent the retaliation or to protect Chatman from Heath. In short, Chatman alleges that Taylor and Pierce turned a blind eye towards Heath's unconstitutional conduct, and therefore, they are liable to him. Defendants have now moved for summary judgment on Chatman's claim against them.

## II.
## LEGAL STANDARDS GOVERNING SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see Ruiz-Rivera v. Moyer,* 70 F.3d 498, 500-01 (7th Cir. 1995). The moving party has the burden of providing proper documentary evidence to show the absence of a genuine issue of material fact.

3

*Celotex Corp. v. Catrett,* 477 U.S. 317, 323-24 (1986). Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials of the pleadings, which demonstrates that there is a genuine issue for trial. *Gracia v. Volvo Europa Truck, N.V.,* 112 F.3d 291, 294 (7th Cir. 1997). "[A] party moving for summary judgment can prevail just by showing that the other party has no evidence on an issue on which that party has the burden of proof." *Brazinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176, 1183 (7th Cir. 1993).

Accordingly, the non-movant cannot rest on the pleadings alone, but must designate specific facts in affidavits, depositions, answers to interrogatories or admissions that establish that there is a genuine triable issue; he "'must do more than simply show that there is some metaphysical doubt as to the material fact.'" *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256-57 (1986)(quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)); *Hot Wax, Inc. v. Turtle Wax, Inc.,* 191 F.3d 813, 818 (7th Cir. 1999). Finally, a scintilla of evidence in support of the non-movant's position is not sufficient to oppose successfully a summary judgment motion; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson,* 477 U.S. at 250.

### III.
### ANALYSIS

**A.   Heath is entitled to summary judgment because Chatman failed to proffer any evidence that Heath's alleged retaliation against him was motivated by Chatman's constitutionally protected activities.**

"An act taken in retaliation for the exercise of a constitutionally protected right violates the Constitution." *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000). "Otherwise permissible actions by prison officials can become impermissible if done for retaliatory reasons." *Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir 2000). In order to state a claim for retaliation

4

for exercising one's First Amendment right, a plaintiff must demonstrate that: "(1) his speech was constitutionally protected; (2) he has suffered a deprivation likely to deter free speech; and (3) his speech was at least a motivating factor" behind the retaliatory actions. *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006).

"A 'motivating factor' in this context 'is a factor that weighs in [on] the defendant's decision to take the action complained of-in other words, it is a consideration present to his mind that favors, that pushes him toward action." *Dace v. Smith-Vasquez*, 658 F. Supp. 2d 865, 881 (S.D. Ill. 2009)(quoting *Hasan v. United States Dept. of Labor*, 400 F.3d 1001, 1006 (7th Cir. 2005)). A plaintiff may demonstrate that his speech was a motivating factor behind the defendant's retaliatory actions by presenting direct or circumstantial evidence. *Kidwell v. Eisenhauer*, 679 F.3d 957, 965 (7th Cir. 2012). "Direct evidence is evidence which, if believed by the trier of fact, will prove the particular fact in question without reliance upon inference or presumption." *Rudin v. Lincoln Land Cmty. College*, 420 F.3d 712, 720 (7th Cir. 2005)(internal quotation omitted). Direct evidence is rare and is something along the lines of a direct admission. *Naficy v. Illinois Dept. of Human Servs.*, 697 F.3d 504, 512 (7th Cir. 2012); *Benders v. Bellows & Bellows*, 515 F.3d 757, 764 (7th Cir. 2008).

On the other hand, "[c]ircumstantial evidence . . . is evidence from which a trier of fact may infer that retaliation occurred." *Kidwell*, 679 F.3d at 966. "Circumstantial evidence may include suspicious timing, ambiguous oral or written statements, or behavior towards or comments directed at other[s] . . . ." *Long v. Teachers' Retirement Sys. of Illinois*, 585 F.3d 344, 350 (7th Cir. 2009). Regardless of whether the plaintiff offers direct or circumstantial evidence, "[t]o demonstrate the requisite causal connection in a retaliation claim, [a] plaintiff[] must show that the protected activity and the adverse action are not wholly unrelated." *Sauzek v. Exxon Coal*

5

*USA, Inc.*, 202 F.3d 913, 918 (7th Cir. 2000). "If he can show that retaliatory animus was a factor, then the burden shifts to the defendants to prove that the same actions would have occurred in the absence of the protected conduct." *Soto v. Bertrand*, 2009 WL 1220753, * 1 (7th Cir. 2009).

In the instant case, Chatman spends most of his response brief detailing the alleged retaliatory actions that he suffered at the hands of Heath. Although Chatman may have established a genuine issue of material fact regarding whether Heath took any retaliatory actions against him, he has failed to offer any evidence that Heath took any retaliatory actions against Chatman because Chatman exercised his protected right of filing grievances against and writing to the warden about Heath. Accordingly, Heath is entitled to summary judgment.

Chatman attempts to present both direct and circumstantial evidence in support of his claim. As for his direct evidence, Chatman points to the disciplinary tickets themselves as evidence of Heath's retaliation based upon his filing grievances and writing letters against Heath. Chatman asserts that "there could be no other reason" for the falsified disciplinary tickets.

However, neither disciplinary ticket contains an admission or constitutes direct evidence that Heath retaliated against Chatman in violation of Chatman's First Amendment rights. *Naficy*, 697 F.3d at 512; *Benders*, 515 F.3d at 764. Chatman may deny that he engaged in the conduct that formed the basis for Heath issuing the disciplinary ticket to him, but the factual recitation in the disciplinary ticket itself does not constitute direct evidence of retaliation, and it is not enough for Chatman to say that the question is for the jury to decide. *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008)("As we have said before, summary judgment is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events."). Chatman must present some evidence with which to

6

demonstrate a genuine issue of material fact that unlawful retaliation was a motivating factor in Heath's actions, and the disciplinary tickets themselves do not constitute direct evidence that will prove that Chatman's grievances and writings were a motivating factor "without reliance upon inference or presumption." *Rudin*, 420 F.3d at 720.

Likewise, Chatman relies upon circumstantial evidence in support of his claim that Heath's actions against him were motivated, at least in part, by his grievances and writings to the warden about Heath. This circumstantial evidence takes two forms, but neither is sufficient to withstand summary judgment. *First*, Chatman appears to rely upon the timing between his grievances against Heath and his disciplinary tickets. The Court says "appears" because at one point Chatman relies upon a timing argument but at another point disclaims that he is relying upon a timing argument. This is of no consequence, however, because suspicious timing alone does not support a reasonable inference of retaliation. *Dace*, 658 F. Supp. 2d at 881. "[I]nstead, plaintiffs must produce evidence that somehow ties the adverse [action] to the plaintiff's protected actions. The fact that one event preceded another does nothing to prove the first event caused the second." *Id*. (internal citation omitted); *Andonissamy v. Hewlett-Packard Co.*, 547 F.3d 841, 851 (7th Cir. 2008)("mere temporal proximity is not enough to establish a genuine issue of material fact.")(internal quotation omitted).

In order for an inference of causation to be drawn solely on the basis of suspicious timing, the Seventh Circuit typically "allow[s] no more than a few days to elapse between the protected activity and the adverse action." *Kidwell*, 679 F.3d at 966 (citing cases). Here, Chatman wrote his first grievance against Heath on August 22, 2010, but Heath did not issue the first disciplinary ticket against Chatman until September 17, 2010. This four-week plus gap in time is too long to raise an inference of causation sufficient to preclude summary judgment. In

7

other words, the disciplinary tickets did not "follow close on the heels" of the protected activity, and therefore, the timing of events is insufficient to constitute evidence with which to raise a genuine issue of material fact regarding causation. *Loudermilk v. Best Pallet Co.*, 636 F.3d 312, 315 (7th Cir. 2011).

*Second*, Chatman relies upon pure speculation in support of his First Amendment claim. Specifically, Chatman contends that Heath's retaliatory motivation is established because that is "the only reason" that could exist for Heath issuing the disciplinary tickets. However, "mere speculation is not sufficient to stave off summary judgment." *Soto*, 2009 WL 1220753, * 2 (citing *Rockwell Automation, Inc. v. National Union Fire Ins. Co. of Pittsburgh, PA*, 544 F.3d 752, 757 (7th Cir. 2008)). Chatman must do more than assert that retaliation occurred and assert that the jury must decide the issue. He must, instead, produce some evidence that his protected activities were a motivating factor in Heath's decision to issue Chatman two disciplinary tickets. Chatman has failed to offer any such evidence, and therefore, Heath is entitled to the summary judgment that he seeks.

### B. Pierce and Taylor are entitled to summary judgment because they lack the personal involvement necessary to be liable under § 1983.

Likewise, Pierce and Taylor are entitled to summary judgment. During his deposition, Chatman acknowledged that he sued Pierce and Taylor based upon their positions of leadership in the Pontiac Correctional Center and the IDOC. Chatman has conceded that neither Pierce nor Taylor personally harassed him, tampered with his mail, or tampered with his food, and neither was present when Heath allegedly did.

"[I]ndividual liability under § 1983 requires 'personal involvement in the alleged constitutional deprivation.'" *Minix v. Canarecci*, 597 F.3d 824, 833 (7th Cir. 2010)(quoting *Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003)). In fact, the Seventh Circuit has

8

explained that the doctrine of *respondeat superior* (a doctrine whereby a supervisor may be held liable for an employee's actions) has no application to § 1983 actions. *Gayton v. McCoy*, 593 F.3d 610, 622 (7th Cir. 2010). Instead, in order for a supervisor to be held liable under § 1983 for the actions of his subordinates, the supervisor must "approve[] of the conduct and the basis for it." *Chavez v. Illinois State Police*, 251 F.3d 612, 651 (7th Cir. 2001); *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995)("An official satisfies the personal responsibility requirement of section 1983 . . . if the conduct causing the constitutional deprivation occurs at [his] direction or with [his] knowledge and consent.")(internal quotation omitted). "[S]upervisors must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see. They must in other words act either knowingly or with deliberate, reckless indifference." *Backes v. Village of Peoria Heights, Illinois*, 662 F.3d 866, 870 (7th Cir. 2011) (quoting *Chavez*, 251 F.3d at 651)). "In short, some causal connection or affirmative link between the action complained about and the official sued is necessary for § 1983 recovery." *Gentry*, 65 F.3d at 561.

Here, Chatman has offered evidence that he and his family complained to Pierce and Taylor about Heath, but he has offered no evidence that Pierce or Taylor approved, condoned, or turned a blind eye towards Heath's alleged unconstitutional behavior.[1] Indeed, Internal Affairs conducted an investigation into Chatman's allegations that Heath was smuggling contraband into the facility, but Internal Affairs could not substantiate the allegation. Accordingly, prison officials did not turn a blind eye toward the situation, and just because Chatman does not agree with the outcome of the investigation, that does not mean that Pierce and Taylor turned a blind

---

[1] Notably, Chatman offered evidence that he complained about Heath's actions to Pierce and Taylor, but he offered no evidence that he made Pierce and Taylor aware that Heath was allegedly retaliating against him based upon Chatman filing grievances against and writing letters to the warden about Heath.

eye toward the situation.  Moreover, even if *respondeat superior* did apply in § 1983 actions, Pierce and Taylor could not be held derivatively liable based upon Heath's conduct because the Court has found that Heath is entitled to summary judgment on Chatman's First Amendment claim against him.

**IT IS, THEREFORE, ORDERED:**

1) Defendants' Motion for Summary Judgment [D/E 45] is GRANTED.  The Clerk of the Court is directed to enter judgment in Defendants' favor and against Plaintiff.  All pending motions are denied as moot, and this case is terminated, with the Parties to bear their own costs.  All deadlines and settings on the Court's calendar are vacated.

2) If Plaintiff wishes to appeal this judgment, he must file a notice of appeal with this Court within 30 days of the entry of judgment.  Fed. R. App. P. 4(a)(4).

3) If Plaintiff wishes to proceed *in forma pauperis* on appeal, his motion for leave to appeal *in forma pauperis* must identify the issues that he will present on appeal to assist the Court in determining whether the appeal is taken in good faith.  *See* Fed. R. App. P. 24(a)(1)(c); *see also Celske v. Edwards*, 164 F.3d 396, 398 (7th Cir. 1999)(an appellant should be given an opportunity to submit a statement of his grounds for appealing so that the district judge "can make a responsible assessment of the issue of good faith."); *Walker v. O'Brien*, 216 F.3d 626, 632 (7th Cir. 2000)(providing that a good faith appeal is an appeal that "a reasonable person could suppose . . . has some merit" from a legal perspective).  If Plaintiff does choose to appeal, he will be liable for the $505.00 appellate filing fee regardless of the outcome of the appeal.

ENTERED this 14th day of January, 2014.

                                                                             _____/s Michael M. Mihm_____
                                                                                     MICHAEL M. MIHM
                                                             UNITED STATES DISTRICT JUDGE